UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED FOOTWEAR GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHUBB LIMITED and ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendants. | Civil Action No.: 1:20-cv-8641<br><br><u>**COMPLAINT**</u> |

Plaintiff United Footwear Group, LLC files this Complaint for declaratory judgment and damages against Defendants Chubb Limited and ACE Property and Casualty Insurance Company (collectively, "Defendants" or "Chubb"), alleging the following:

**NATURE OF THE CASE**

1. This is a civil action seeking declaratory relief and damages arising from Plaintiff's contract of insurance with Chubb.

2. In light of the Coronavirus pandemic and state and local orders requiring all non-life-sustaining businesses in the State of New York to cease operations and close all physical locations, Plaintiff closed its business on March 23, 2020.

3. Plaintiff had in place commercial insurance issued by Chubb, and expected it would cover, among other damages, business income losses from a pandemic and closure by a civil authority.

4. Plaintiff's insurance policy is an "all risk" policy which provides coverage for all non-excluded business losses. Plaintiff's losses, caused by the pandemic and civil authority order, are covered under the policy. However, Chubb denied Plaintiff's claim for coverage.

5. As a result, Plaintiff seeks declaratory relief that its business is covered under its insurance policy for all business losses that have been suffered and sustained, and requests an award of monetary damages for Chubb's breach of the policy.

## JURISDICTION

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because complete diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy is greater than $75,000, exclusive of interest and costs.

7. Plaintiff is a citizen of the State of New York.

8. Upon information and belief Defendant Chubb Limited is a citizen of Switzerland and Defendant ACE Property and Casualty Insurance Company is a citizen of the Commonwealth of Pennsylvania.

9. This Court has personal jurisdiction over Defendants because at all relevant times it has engaged in substantial business activities in the State of New York. At all relevant times Defendants transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York.

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b)(1) because Plaintiff resides in this District. Venue is also proper pursuant to 28 U.S.C. §1391(b)(3) because Defendants are subject to this Court's personal jurisdiction.

## THE PARTIES

11. Plaintiff United Footwear Group, LLC ("Plaintiff") is a New York State company, with its principal place of business at 10 West 33rd Street, Room 804, New York, New York 10001.

12. Defendant Chubb Limited is a Swiss corporation with its principal place of business located, upon information and belief, in Zurich, Switzerland. It owns subsidiaries, directly and indirectly, that issue, among other things, property insurance.

13. Defendant ACE Property and Casualty Insurance Company, is a foreign corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106. Upon information and belief, Defendant ACE Property and Casualty Insurance Company is a subsidiary of Chubb Limited

14. Upon information and belief, Defendant Chubb Limited is responsible for, among other things, receiving loss notices, managing claims, and responding to questions about insurance and coverage related to policies issued or underwritten by Defendant ACE Property and Casualty Insurance Company.

**FACTUAL BACKGROUND**

**A.   Insurance Coverage**

15. Plaintiff is a wholesale importer, distributor and seller of footwear.

16. On or about May 3, 2019, Plaintiff purchased insurance from Chubb, policy number D52721751 (the "Chubb Policy" or "Policy"), expecting to be insured against losses, including, but not limited to, business income losses at its premises located at 10 W33rd Street, Room 804, New York, New York 10001 (the "Insured Premises"). The policy is attached as Exhibit 1.

17. The Insured Premises includes three showrooms from which Plaintiff sells footwear.

18. Plaintiff purchased from Chubb, among other coverages, Business Income and Extra Expense loss coverage for losses sustained due to the suspension of business operations, and coverage for closure by Order of Civil Authority.

19. Plaintiff did not participate in the drafting of the Chubb Policy.

20. Plaintiff did not participate in the negotiation of the Chubb Policy.

21. Plaintiff possessed no power or ability to alter or negotiate any terms contained in the Chubb Policy.

22. The Chubb Policy is an "all-risks" policy which provides coverage for the Insured Premises unless specifically excluded.

23. In the Policy, Chubb promised to pay for losses of business income sustained due to the suspension of operations caused by "direct physical loss of or damage" to property at the Insured Premises, which was caused by or resulted from a "Covered Cause of Loss". This coverage is identified as "Business Income." See Ex. 1, p. 5 of 49, Section I(A)(5)(f).

24. The Policy defines "Covered Causes Of Loss" as "Risks of direct physical loss" unless the loss is excluded or limited by the terms of the Policy. See Ex. 1, p. 2 of 49, Section I(A)(3).

25. The Chubb Policy also provided that the insurance coverage applied to extra expense that would not have been incurred if there had been no direct physical loss or damage to property at the Insured Premises. This coverage is identified as "Extra Expense". See Ex. 1, p. 7 of 49, Section I(A)(5)(g).

26. In addition, the Chubb Policy provided that the insurance coverage applied to the actual loss of business income sustained when access to the Insured Premises is prohibited by order of civil authority as the result of a Covered Cause of Loss to property in the immediate area

of Plaintiff's Insured Premises. This coverage is identified as "Civil Authority." See Ex. 1, p. 7 of 53, Section I(A)(5)(i).

27. The reasonable expectation of Plaintiff was that the Business Income, Extra Expense, and Civil Authority coverage contained in the Policy provided coverage when a pandemic and/or a civil authority forced closure of its business.

28. Losses caused by the COVID-19 pandemic and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, and Civil Authority provisions of the Policy.

29. Furthermore, as set forth *infra*, Plaintiff suffered "direct physical loss of or damage to property" within the definition of the Policy, which triggered coverage under the Policy.

30. The Policy does not exclude the losses suffered by Plaintiff and therefore, the Policy does provide coverage for the losses incurred by Plaintiff.

31. The Chubb Policy contains an exclusion for losses or damage caused by virus or bacteria. See Ex. 1, p. 17 of 49, Section B(j).

32. However, the virus or bacteria exclusion does not apply because Plaintiff's losses were not caused by a virus or bacteria.

33. Instead, Plaintiff's losses were caused by the entry of civil authority orders, particularly those by Governor Cuomo to mitigate the spread of COVID-19 and end the pandemic.

34. Furthermore, to the extent that the coverage under the Policy derives from direct physical loss or damage caused by the novel coronavirus, Chubb should be estopped from

enforcing the virus exclusion, on principles of regulatory estoppel, as well as general public policy.

35.     Upon information and belief, in 2006, two insurance industry trade groups, Insurance Services Office, Inc. ("ISO") and the American Association of Insurance Services ("AAIS"), represented hundreds of insurers in a national effort to seek approval from state insurance regulators for the adoption of the Virus Exclusion.

36.     Upon information and belief, in their filings with the various state regulators, on behalf of the insurers, ISO and AAIS represented that the adoption of the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" has never been in effect, and was never intended to be included, in the property policies.

37.     Specifically, in its "ISO Circular" dated July 6, 2006 and entitled "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria," ISO represented to the state regulatory bodies that:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage to create sources of recovery for such losses, contrary to policy intent.

38.     Similarly, AAIS, in its "Filing Memorandum" in support of the Virus Exclusion, represented:

> Property policies have not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease-causing agents. With the possibility of a pandemic, there is concern that claims may result in efforts to expand coverage to create recovery for loss where no coverage was originally intended . . .
>
> This endorsement clarifies that loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress is excluded . . .

39. Upon information and belief, the foregoing representations made by the insurance industry were false.

40. By 2006, the time of the state applications to approve the Virus Exclusion, courts had repeatedly found that property insurance policies covered claims involving disease-causing agents, and had held on numerous occasions that any condition making it impossible to use property for its intended use constituted "physical loss or damage to such property."

41. For example, in *Motorists Mutual Insurance Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that a genuine issue of fact existed as to whether the presence of E-Coli at the covered property impacted its functionality, or made the property otherwise useless or uninhabitable, sufficient to establish a physical loss or damage to the property.

42. The holding in *Motorists Mutual Insurance Co. v. Hardinger*, completely belies the statement made by the insurance industry to the state regulators that "property policies have not been a source of recovery for losses involving contamination by disease-causing agents . . . ."

43. Upon information and belief, the foregoing assertions by the insurance industry, made to obtain regulatory approval of the Virus Exclusion, were misrepresentations and for this reason, among other public policy concerns, insurers should now be estopped from enforcing the Virus Exclusion to avoid coverage of claims related to the COVID-19 pandemic.

44. Upon information and belief, securing approval for the adoption of the Virus Exclusion by misrepresenting to the state regulators that the Virus Exclusion would not change the scope of coverage, the insurance industry effectively narrowed the scope of the insuring agreement without a commensurate reduction in premiums charged.

45. The virus exclusion contained in the Chubb Policy is included in a form created by ISO, as the bottom of the form explicitly sets forth that it is copyrighted by "Insurance Services Office, Inc."

46. Under the doctrine of regulatory estoppel, the Court should not permit the insurance industry to benefit from this type of duplicitous conduct before the state regulators.

**B.   Coronavirus Pandemic and Civil Authority Orders**

47. The novel coronavirus, SARS-CoV-2 (COVID-19), is a highly contagious airborne virus which has very rapidly spread across the world, including the United States.

48. As of October 13, 2020, there have been almost 8 million confirmed COVID-19 cases in the United States, and over 210,000 deaths[1].

49. On January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19.

50. On March 7, 2020, New York State Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York as a result of COVID-19.

51. On March 12, 2020, Governor Cuomo set restrictions on large gatherings.

52. On March 12, 2020, the City of New York declared a state of emergency due to the threat posed by COVID-19.

53. On Friday, March 20, 2020, Governor Cuomo issued a stay-at-home order directing that that all non-essential workers must stay at home as a result of the COVID-19 pandemic effective Sunday, March 22, 2020 at 8PM.

54. On March 25, 2020, New York City Mayor Bill de Blasio signed an Emergency Order directing all non-essential businesses in the City of New York to close.

---

[1] https://coronavirus.jhu.edu/us-map (Visited on October 13, 2020).

55. Mayor de Blasio's March 25, 2020 Emergency Order set forth in-part that "this Order is given because of the propensity of the virus to spread person-to-person and also because the actions taken to prevent such spread have led to property loss and damage".

56. Mayor de Blasio's Emergency Orders affirms that efforts to mitigate the spread of COVID-19, including government orders directing closure of non-essential businesses, leads to property loss and damage.

57. As of October 13, 2020, there have been 245,480 confirmed cases of COVID-19 in the City of New York, and 19,244 confirmed deaths (as well as 4,646 "probable deaths", which is when the cause of death was reported as COVID-19, but with no positive laboratory test)[2].

58. The Insured Premises is located in the heart of Manhattan, which has a population of over 1,600,000; in addition, over 1,600,000 workers commuted into Manhattan each day[3].

**C.    Impact on Plaintiff**

59. As a result of Civil Authority Orders, and the ongoing pandemic, Plaintiff's Insured Premises closed on or about Monday, March 23, 2020.

60. The entry of the Civil Authority Orders to mitigate health risks to the public by attempting to prevent COVID-19 contamination, through closing businesses and ordering persons to stay at home resulted in a physical impact on Plaintiff's Insured Premises.

61. Plaintiff had no choice but to comply with the Civil Authority Orders, and close its premises, which included three showrooms, as failure to do so would have exposed Plaintiff and its business to fines and sanctions.

---

[2] https://www1.nyc.gov/site/doh/covid/covid-19-data.page (Visited on October 13, 2020).
[3] https://www.census.gov/newsroom/press-releases/2013/cb13-r17.html (Visited on October 14, 2020), and  https://www.census.gov/quickfacts/newyorkcountymanhattanboroughnewyork (Visited on October 14, 2020).

62. The Civil Authority Orders constitute a Covered Cause of Loss within the meaning of the Policy.

63. Plaintiff's compliance with state and city mandates resulted in Plaintiff suffering business losses, business interruption and extended expenses of the nature that the Policy covers and for which Plaintiff's reasonable expectation was that coverage existed in exchange for the premiums paid.

64. Plaintiff's Insured Premises partially reopened on or about June 22, 2020.

65. On or about July 6, 2020, the Insured Premises reopened; however, Plaintiff continues to suffer damages and harm as a result of the Civil Authority Orders.

66. As a result of Civil Authority Orders, Plaintiff has been forced to make alterations to the Premises, including rearranging furniture, and affixing physical signs and markers around the Premises.

67. As a result of the Civil Authority Orders, which mandated closure of the Plaintiff's Premises, the Premises incurred direct physical loss and damage.

68. The Civil Authority Orders caused a direct physical loss of or damage to Plaintiff's Insured Premises by rendering the Insured Premises unusable for its intended purpose.

69. The Civil Authority Orders also caused a direct physical loss of or damage to Plaintiff's Insured Premises by diminishing the value of the Insured Premises.

70. Alternatively, the COVID-19 pandemic caused direct physical loss of or damage to the Insured Premises under the Policy by rendering the Insured Premises unsafe, uninhabitable, and causing a necessary suspension of operations.

71. Furthermore, and as an additional basis for coverage under the Policy, the ubiquitous nature of COVID-19 and/or another Covered Cause of Loss have caused direct

physical loss of or damage to property other than Plaintiff's Insured Premises, and such loss or damage resulted in an action by civil authority prohibiting access to Plaintiff's Insured Premises, within the meaning of the Policy.

72. As a result, Plaintiff suffered business income losses which are covered by the Chubb Policy.

73. Plaintiff faithfully paid premiums to Chubb for coverage to ensure the survival of the business due to the business closure caused by a pandemic and/or ordered by the Civil Authority.

74. It was Plaintiff's reasonable expectation that if a pandemic occurred and/or if civil authorities forced a full or partial closure of Plaintiff's Insured Premises, the loss of income would be covered under the Policy.

75. As a result of the pandemic and resulting Civil Authority orders, Plaintiff incurred, and continues to incur, a loss of business income and additional expenses covered under the Chubb Policy.

76. On or about June 30, 2020, Plaintiff submitted a notice of loss to Chubb claiming a business income loss.

77. On or about August 11, 2020, Chubb sent Plaintiff a letter denying coverage under the Policy.

## COUNT I
## DECLARATORY RELIEF

78. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

79. Under 28 U.S.C. §§2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

80. Plaintiff's Policy is an insurance contract under which Chubb was paid premiums in exchange for promises to pay losses for claims covered by the Policy.

81. In the Policy, Chubb promised to pay for losses of business income sustained as a result of perils not excluded under the Policy.

82. Plaintiff suffered losses of business income due to direct physical loss of or damage to the Insured Premises.

83. These losses triggered Business Income, Extra Expense, and Civil Authority coverage under the Policy, and additional coverages applicable to the losses claimed in this action.

84. Plaintiff has complied with all applicable provisions of its Policy, including payment of premiums.

85. Chubb, without justification, disputes that the Policy provides coverage for Plaintiff's losses.

86. Plaintiff seeks a Declaratory Judgment that its Policy provides Business Income, Extra Expense, and Civil Authority coverage because of losses attributable to Civil Authority Orders and/or the COVID-19 pandemic; and that Chubb is obligated to pay for the full amount of Plaintiff's losses.

87. An actual controversy exists between Plaintiff and Defendants because Chubb denied Plaintiff's claim for coverage.

88. Plaintiff's interest in the Chubb Policy and declaratory relief is direct, substantial, quantifiable, and immediate.

89. Declaratory Judgement is appropriate in the manner requested herein by Plaintiff.

## COUNT II
## BREACH OF CONTRACT
### (Business Interruption and Extra Expense Coverage)

90. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

91. Plaintiff's Policy is an insurance contract under which Chubb was paid premiums in exchange for promises to pay losses for claims covered by the Policy.

92. The Policy includes coverage for Business Income and Extra Expense incurred as a result of causes of losses not excluded.

93. Specifically, Chubb promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations.

94. Civil Authority Orders and/or the COVID-19 pandemic have caused and continue to cause direct physical loss of or damage to the Insured Premises.

95. Because of the direct physical loss of or damage to the Insured Premises, Plaintiff experienced a full and then partial cessation of the business it operates and conducts from the Insured Premises.

96. The suspension of business and losses triggered the Policy's Business Income and Extra Expense coverage.

97. Plaintiff complied with all requirements of the Policy.

98. Chubb was advised of Plaintiff's claims and demand for coverage under the Chubb Policy.

99. Chubb breached the terms and provisions of Policy by denying the claims of Plaintiff for all losses caused by the Civil Authority Orders and/or the COVID-19 pandemic.

100. The breach of the indemnification obligations under the Chubb Policy by Chubb has caused Plaintiff to suffer substantial loss and harm.

101. Plaintiff is entitled to damages against Defendants as a result of Chubb's breach in an amount to be determined at trial, including pre-and post-judgment interest and any other costs and relief that this Court deems proper.

## COUNT III
## BREACH OF CONTRACT
### (Civil Authority Coverage)

102. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

103. Plaintiff's Policy is an insurance contract under which Chubb was paid premiums in exchange for promises to pay losses for claims covered by the Policy.

104. Direct physical loss of or damage to property in the immediate area of the Insured Premises, resulting from the ubiquitous nature of COVID-19 and/or another Covered Cause of Loss, caused civil authorities to prohibit access to the Insured Premises.

105. Plaintiff has experienced and continues to experience a loss under the Policy's Civil Authority coverage arising from the direct physical loss of or damage to property caused by the ubiquitous nature COVID-19 and/or another Covered Cause of Loss.

106. These actions, losses, and expenses triggered Civil Authority coverage under the Policy.

107. Plaintiff complied with all requirements of the Policy.

108. Chubb was advised of Plaintiff's claims and demand for coverage under the Chubb Policy.

109. Chubb breached the terms and provisions of Policy by denying the claims of Plaintiff for all losses that have been incurred.

110. The breach of the indemnification obligations under the Policy by Chubb has caused Plaintiff to suffer, and continue to suffer, substantial loss and harm.

111. Plaintiff is entitled to damages against Defendants as a result of Chubb's breach in an amount to be determined at trial, including pre - and post-judgment interest and any other costs and relief that this Court deems proper.

## REQUEST FOR RELIEF

Plaintiff United Footwear Group, LLC requests that the Court enter judgment in its favor and against Defendants Chubb Limited and ACE Property and Casualty Insurance Company, as follows:

A. As to Count I, a declaration that:

    i. All Business Income, Extra Expense, and Civil Authority losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered under Plaintiff's Policy; and,

    ii. Defendant is obligated to pay for the full amount of the Business Income, Extra Expense, and Civil Authority losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above;

B. As to Count II, a Judgment awarding monetary damages for breach of contract in an amount to be determined at trial;

C. As to Count III, a Judgment awarding monetary damages for breach of contract in an amount to be determined at trial;

D. An order requiring Defendants to pay both pre-and post-judgment interest on any amounts awarded;

E. An award of costs and attorneys' fees; and

F. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands at trial by jury as to all issues so triable.

Dated: October 16, 2020

        ZILBERBERG EINHORN KARPEL, P.C.
        *Attorneys for the Plaintiff*

        /s/ Samuel Karpel
By: _____
        Samuel Karpel
        66 Split Rock Road
        Syosset, New York 11791
        Telephone (718) 249-2202
        Facsimile (718) 256-7900
        skarpel@zeklawfirm.com